# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| SAMUEL JOHNSON, | |
|     Plaintiff, | Case No. 3:21-cv-00656 |
| v. | Judge William L. Campbell, Jr. |
| UNIVERSITY HOSPITALS HEALTH SYSTEM, INC., | Magistrate Judge Barbara D. Holmes |
|     Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS OR, ALTERNATIVELY, FOR A STAY PENDING ARBITRATION

L. Webb Campbell II (No. 11238)
John L. Farringer IV (No. 22783)
SHERRARD ROE VOIGT HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
(615) 742-4200
wcampbell@srvhlaw.com
jfarringer@srvhlaw.com

Justin E. Herdman (admitted *pro hac vice*)
Collin R. Flake (admitted *pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-3939
jherdman@jonesday.com
cflake@jonesday.com

*Counsel for Defendant University Hospitals Health System, Inc.*

Dated: October 15, 2021

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

ALLEGATIONS IN THE COMPLAINT ....................................................................... 2

LEGAL STANDARD ...................................................................................................... 4

ARGUMENT ................................................................................................................... 5

    I.     UH Is Entitled To Judgment On Count 1 Because The Complaint Does Not Allege That UH Had Improper Motive Or Used Improper Means ................. 5

    II.    UH Is Entitled To Judgment On Counts 2 And 3 Because The Complaint Does Not Allege A Plausible Breach Of Mr. Johnson's Employment Contract ............................................................................................................. 7

    III.   Alternatively, This Case Should Be Stayed Pending The Arbitration Between Mr. Johnson And VisuWell ................................................................... 9

CONCLUSION ............................................................................................................... 11

# TABLE OF AUTHORITIES

Cases                                                                                                       Page(s)

*Aerpio Pharms., Inc. v. Quaggin*,
   No. 1:18-cv-794, 2019 WL 4717477 (S.D. Ohio Sept. 26, 2019) .......................................... 11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................................ 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ................................................................................................................ 4

*Biggers v. Accelecare Wound Ctrs., Inc.*,
   No. 3:10-cv-0128, 2015 WL 1734754 (M.D. Tenn. Apr. 16, 2015) ....................................... 7

*D & R Co. v. BASF Corp.*,
   No. 09-cv-10641, 2010 WL 11545257 (E.D. Mich. Mar. 26, 2010) ..................................... 10

*Doe v. Belmont Univ.*,
   334 F. Supp. 3d 877 (M.D. Tenn. 2018) ................................................................................. 5

*Dynamic Motel Mgmt., Inc. v. Erwin*,
   528 S.W.2d 819 (Tenn. Ct. App. 1975) .................................................................................. 7

*Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*,
   461 F. Supp. 2d 629 (M.D. Tenn. 2006) ............................................................................. 6, 7

*Halvorsen v. Plato Learning, Inc.*,
   167 F. App'x 524 (6th Cir. 2006) ............................................................................................ 5

*Ingram v. Tenn. Dep't of Health*,
   No. 3:17-cv-01565, 2021 WL 3490025 (M.D. Tenn. Aug. 9, 2021) ...................................... 8

*JPMorgan Chase Bank, N.A. v. Winget*,
   510 F.3d 577 (6th Cir. 2007) ................................................................................................... 5

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................................................... 9

*Tenn. Imports, Inc. v. Filippi*,
   745 F. Supp. 1314 (M.D. Tenn. 1990) ............................................................................. 9, 10

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*,
   71 S.W.3d 691 (Tenn. 2002) ............................................................................................... 5, 6

*Vision Real Estate Inv. Corp. v. Metro. Gov't of Nashville & Davidson Cnty.*,
   No. 3:18-cv-00014, 2019 WL 4748386 (M.D. Tenn. Sept. 30, 2019) .................................... 8

# TABLE OF AUTHORITIES

Page(s)

*Warde v. Kaiser*,
   887 F.2d 97 (6th Cir. 1989) ............................................................................................... 7, 8

*Wert v. Vanderbilt Univ.*,
   No. 3:20-cv-00140, 2020 WL 5039466 (M.D. Tenn. Aug. 26, 2020) ................................. 5, 8


Other Authorities

Fed. R. Civ. P. 7(a) ................................................................................................................. 5

Fed. R. Civ. P. 10(c) ............................................................................................................... 5

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 5

Fed. R. Civ. P. 12(c) ................................................................................................. 2, 4, 5, 11

Loc. R. 5.03 ............................................................................................................................ 4

Tenn. Code § 47-50-109 (2019) .................................................................................. 4, 7, 10

# PRELIMINARY STATEMENT

Defendant University Hospitals Health System, Inc. ("UH") is a Cleveland, Ohio-based non-profit health care system. In 2021, UH entered into a vendor agreement for telehealth services with WeCounsel Solutions, LLC, d/b/a VisuWell ("VisuWell"). The following month, video surfaced of a public altercation at a hotel in Franklin, Tennessee between VisuWell's CEO, Plaintiff Samuel Johnson, and a group of teenagers. According to Mr. Johnson's complaint, the group included high school promgoers, including a male who was wearing a red prom dress and who was there with his boyfriend. In the words of Mr. Johnson, a "confrontation" ensued.

UH, which has long supported the needs of LGBTQIA+ patients, was understandably shocked and disturbed by the highly publicized video of this "confrontation" and expressed this concern to VisuWell. After investigating the matter, VisuWell made the decision to terminate Mr. Johnson's employment. That employment decision is currently the subject of a pending arbitration between VisuWell and Mr. Johnson. With this lawsuit, Mr. Johnson seeks to travel on parallel tracks by trying to somehow blame UH for the consequences of his own actions, theorizing that he would not have been fired but for UH's purported influence over VisuWell. UH brings this motion because Mr. Johnson's implausible and conclusory claims fail at the pleading stage for multiple reasons.

First, Mr. Johnson does not—and cannot—allege that UH had any improper motive toward him. On the contrary, he asserts that UH was motivated by *its own* business interests in "gain[ing] marketing recognition for its sexual diversity services" and "rais[ing] its profile as a social justice champion." Even if that were true, self-interest is not an improper motive under settled Tennessee law.

Second, Mr. Johnson has not alleged that UH used improper means to interfere with his employment; rather, he merely speculates that UH may have threatened to pull its business from

its newfound vendor VisuWell if it would not fire him. Because as a matter of law there is nothing illegal or improper about such an alleged threat, Mr. Johnson cannot sustain a claim for tortious interference with employment relations.

Third, Mr. Johnson's two claims for tortious interference with contract fare no better. A quintessential element of those claims is an underlying breach of contract. Although Mr. Johnson obviously asserts in the arbitration proceeding that the termination of his employment by VisuWell constituted a breach of his employment contract, the only allegations in the complaint on that score are entirely conclusory and, thus, should not be accepted as true. In any event, it is not plausible that the termination of Mr. Johnson's employment breached his employment contract, particularly since VisuWell had the unequivocal and unambiguous right to terminate his employment without cause. Without a breach of contract, there is no tortious interference claim as a matter of law.

Taking a step back, even if Mr. Johnson's claims were sufficiently pleaded (and they are not), this case should be stayed pending the outcome of the arbitration between VisuWell and Mr. Johnson. The arbitration involves facts and claims that are inherently inseparable from those at issue here. Indeed, the outcome of the arbitration may well be dispositive of the case at bar. And while Mr. Johnson would not be unduly prejudiced by a stay, UH would be prejudiced given the risk of inconsistent rulings and the cost and inconvenience of litigating this action.

## ALLEGATIONS IN THE COMPLAINT[1]

Mr. Johnson was the Chief Executive Officer for VisuWell, a technology company that provides telehealth services to healthcare providers. Compl. ¶ 2. VisuWell entered into

---

[1] As required for a Rule 12(c) motion, UH identifies the following factual allegations from Mr. Johnson's complaint without admitting the truth or accuracy of any of them.

negotiations with UH to become its principal telehealth software provider and the parties signed a vendor agreement on March 11, 2021. *Id.* ¶¶ 3, 17.

A few weeks later, on April 24, 2021, Mr. Johnson was having dinner at the Harpeth Hotel in Franklin, Tennessee, when he was involved in an altercation with a group of teenagers that was taking pictures for prom. *Id.* ¶¶ 33-58. One of the teenagers was wearing a red dress and was there with his boyfriend. *Id.* ¶ 52. The couple got into a "confrontation" with Mr. Johnson, who reportedly told the teenager in the dress that "you look disgusting," "you look like an idiot," and "men shouldn't be wearing this." *Id.* ¶¶ 53, 64.

Mr. Geittmann filmed the confrontation on his cell phone and posted the video to various social media accounts. *Id.* ¶¶ 57, 62-63. Social media users commenting on the video observed that "it showed Mr. Johnson instigating a confrontation with at least two LGBTQIA+ teenagers," and that he "intentionally approached one of the teenagers to mock and harass the male teenager for wearing a dress." *Id.* ¶ 5. The video gained national notoriety on April 26, 2021, when it was retweeted by Kathy Griffin, who has over two million Twitter followers. *Id.* ¶¶ 67-68. Also that day, UH posted a tweet stating that it was "shocked and disturbed by the recent video of VisuWell's Chief Executive Officer," that UH has "long supported the medical, emotional and social needs of LGBTQIA+ patients," and that in light of the video, UH was "evaluating [its] business relationship with VisuWell." *Id.* ¶ 70.

Then, UH purportedly "called the Chairman of the Board of VisuWell and verbally demanded that Mr. Johnson be fired," allegedly threatening to "pull its business from VisuWell" if its "demands were not met immediately." *Id.* ¶¶ 72-73. The supposed motivation for UH's demand was "gain[ing] marketing recognition for its sexual diversity services," "rais[ing] its profile as a social justice champion," and "enhancing [its] tangible and intangible monetary

value" through "insertion of its marketing slogans and branding statements in the midst of its public responses to the Video Clip." *Id*. ¶¶ 75-76.

After investigating the matter and speaking with individuals involved, VisuWell decided to terminate Mr. Johnson's employment contract on April 26, 2021. *Id.* ¶¶ 91-93. The contract permitted VisuWell to fire Mr. Johnson for cause if he engaged in conduct that "is or could reasonably be expected to be materially injurious to [VisuWell]." Exhibit 1 at § 4.3.[2] It also gave VisuWell "the right to terminate this Agreement and [Mr. Johnson]'s employment hereunder at any time without Cause." *Id.* at § 4.4. In the event of a dispute, the contract provides that the parties must submit to "binding arbitration before a mutually agreed upon single arbitrator in Hartford, Connecticut," including with respect to "disputes regarding the occurrence of Cause or Good Reason events that are the subject of any termination." *Id.* at § 6.12. Pursuant to that provision, VisuWell and Mr. Johnson are currently engaged in arbitration over the termination of his employment.

On August 24, 2021, Mr. Johnson filed this lawsuit against UH asserting claims for tortious interference with employment relations (Compl. ¶¶ 98-110), tortious interference with contract under Tennessee common law (*id.* ¶¶ 111-118), and tortious interference with contract under Tenn. Code § 47-50-109 (*id.* ¶¶ 119-126).

## **LEGAL STANDARD**

Rule 12(c) permits a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). The standard for evaluating a motion for judgment on the pleadings is the same as that applicable to a motion to

---

[2] A heavily redacted copy of the employment contract was attached to the complaint as Exhibit A, though Mr. Johnson did not obtain the Court's permission to redact the contract under Local Rule 5.03. Counsel for UH obtained a largely unredacted copy of the contract from Mr. Johnson's counsel, which is attached to this memorandum as Exhibit 1.

dismiss under Rule 12(b)(6). *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007). Accordingly, to survive a motion for judgment on the pleadings, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "Identifying and setting aside [conclusory] allegations is crucial, because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief." *Wert v. Vanderbilt Univ.*, No. 3:20-cv-00140, 2020 WL 5039466, at *2 (M.D. Tenn. Aug. 26, 2020) (Campbell, J.).[3]

## ARGUMENT

### I. UH Is Entitled To Judgment On Count 1 Because The Complaint Does Not Allege That UH Had Improper Motive Or Used Improper Means.

To state a claim for tortious interference with employment relations under Tennessee law, a plaintiff must plead:

> (1) an existing [employment] relationship with specific third parties . . . ; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's [employment] in general; (3) the defendant's intent to cause the breach or termination of the [employment] relationship; (4) the defendant's ***improper motive*** or ***improper means***; and (5) damages resulting from the tortious interference.

*Halvorsen v. Plato Learning, Inc.*, 167 F. App'x 524, 530 (6th Cir. 2006) (emphasis added) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002)).

"[A]llegations of mere 'malice' are not sufficient to state a claim for tortious interference; rather, to satisfy the 'improper motive' element for a tortious-interference claim, . . . harm to the

---

[3] In ruling on a motion under Rule 12(c), courts look only to the "pleadings." *Doe v. Belmont Univ.*, 334 F. Supp. 3d 877, 887 (M.D. Tenn. 2018). The term "pleadings" includes both the complaint and the answer, Fed. R. Civ. P. 7(a), and "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c).

plaintiff must be the defendant's 'predominant motivation.'" *Freeman Mgmt. Corp. v. Shurgard Storage Ctrs., LLC*, 461 F. Supp. 2d 629, 641 (M.D. Tenn. 2006) (citing *Trau-Med*, 71 S.W.3d at 701 n.5). Thus, a claim for tortious interference with employment fails if "the only reasonable inference to be drawn from the [] Complaint is that [the defendant] was motivated purely by its own business interest, in the pursuit of which it caused incidental harm to Plaintiffs." *Id.*

Mr. Johnson does not and cannot allege that UH had any improper motive to interfere with his employment. He instead insists that UH demanded that VisuWell fire him in order to further UH's own business interests:

- "After it learned of the Clip, UH Cleveland made a unilateral and intentional decision, ***motivated by commercial and financial incentives***, to induce VisuWell to fire Mr. Johnson for his purported conduct at the April 24 Incident." Compl. ¶ 69 (emphasis added).

- "UH Cleveland's conduct was malicious. It used the notoriety of the Video Clip . . . as a marketing opportunity. UH Cleveland intended to leverage the notoriety of the Clip ***for its sole commercial benefit***. Such an intent is demonstrated by two key facts. First, UH Cleveland ***gained marketing recognition for its sexual diversity services*** by attacking Mr. Johnson." *Id.* ¶ 75 (emphasis added).

- "Second, UH Cleveland's attacks on Mr. Johnson ***raised its profile as a social justice champion***. . . . UH Cleveland's campaign to induce VisuWell to fire Mr. Johnson were published, in part, ***for the purpose of enhancing UH Cleveland's tangible and intangible monetary value***. UH Cleveland's insertion of its marketing slogans and branding statements in the midst of its public responses to the Video Clip shows UH Cleveland's desire to use this April 24 Incident ***to enhance its profitability***." *Id.* ¶ 76 (emphasis added).

- "UH Cleveland's conduct was ***intended to advance its sole commercial and financial interests*** at Mr. Johnson's expense." *Id.* ¶ 78 (emphasis added).

- "UH Cleveland's conduct was purely malevolent. UH Cleveland desired to do harm to Mr. Johnson ***for its own sake***." *Id.* ¶ 79 (emphasis added).

- "UH Cleveland leveraged the inflated and unsubstantiated outrage over the Video Clip ***for its own commercial benefit***." *Id.* ¶ 80 (emphasis added).

Because UH's alleged motive relates purely to advancing its own interests, which as alleged only incidentally harmed Mr. Johnson, his claim fails as a matter of law.

In addition, the improper means employed by a defendant must "amount to statutory violations, violence, bribery, fraud, misrepresentation, breach of a fiduciary relationship or any other overtly unethical conduct of the type the Tennessee Supreme Court seemed to have in mind in *Trau-Med*." *Freeman Mgmt.*, 461 F. Supp. 2d at 641. According to Mr. Johnson, UH used improper means by threatening to "pull its business from VisuWell" if it did not fire him. *See* Compl. ¶¶ 73-74. But that type of threat is insufficient to state a claim for tortious interference. *See, e.g.*, *Biggers v. Accelecare Wound Ctrs., Inc.*, No. 3:10-cv-0128, 2015 WL 1734754, at *8 (M.D. Tenn. Apr. 16, 2015) (finding that defendant's threats of litigation were "not the type of threats that establish improper means because they are not illegal in nature"); *Freeman Mgmt.*, 461 F. Supp. 2d at 641-42 (holding that threat of pulling out of merger did not constitute improper means where it was "not in any sense illegal"). For this reason, too, UH is entitled to judgment as a matter of law on Count 1 of the complaint.

## II.  UH Is Entitled To Judgment On Counts 2 And 3 Because The Complaint Does Not Allege A Plausible Breach Of Mr. Johnson's Employment Contract.

To establish a claim for tortious interference with contract under both Tennessee common law and Tenn. Code § 47-50-109, each of the following conditions must be met:

> (1) There must be a legal contract; (2) The wrongdoer must have known of the existence of the contract; (3) The wrongdoer must have intended to induce its breach; (4) The wrongdoer must have acted maliciously; (5) ***The contract must have been breached***; (6) The act complained of must have been the proximate cause of the breach; and (7) Damages must have resulted from the breach.

*Warde v. Kaiser*, 887 F.2d 97, 101 (6th Cir. 1989) (emphasis added) (quoting *Dynamic Motel Mgmt., Inc. v. Erwin*, 528 S.W.2d 819, 822 (Tenn. Ct. App. 1975)). Simply put, "there 'must' have been a breach of contract" before a defendant can be liable for tortiously interfering with

that contract.  *Warde*, 877 F.2d at 101; *accord Vision Real Estate Inv. Corp. v. Metro. Gov't of Nashville & Davidson Cnty.*, No. 3:18-cv-00014, 2019 WL 4748386, at *14 (M.D. Tenn. Sept. 30, 2019) (Campbell, J.) (dismissing claim for tortious interference with contract where defendant's actions did not result in contractual breach).

The breach upon which Mr. Johnson's tortious interference claims relies relates to his employment contract.  *See* Compl. ¶¶ 92, 116, 124.  The allegations in the complaint regarding the purported breach, however, are wholly conclusory and do not state ***how*** the termination of Mr. Johnson's employment breached the terms of his contract:

- "UH Cleveland, through the acts described herein, induced . . . VisuWell . . . to breach its contract with Mr. Johnson[.]"  *Id.* ¶ 29.

- "UH Cleveland's actions played an active and substantial part in the breach of the employment contract between Mr. Johnson and VisuWell."  *Id.* ¶ 74.

- "VisuWell terminated Mr. Johnson's employment contract on or about April 26, 2021.  Such termination constituted, under the terms of the employment contract, a breach thereof."  *Id.* ¶ 92.

- "UH Cleveland . . . intentionally procured the contract's breach and intended to induce a breach of Mr. Johnson's employment contract with VisuWell."  *Id.* ¶¶ 114, 122.

- "VisuWell's termination of Mr. Johnson on or about April 27, 2021 constituted a breach of the employment contract between VisuWell and Mr. Johnson."  *Id.* ¶¶ 116, 124.

These conclusory allegations "simply do not count toward [Mr. Johnson's] goal of showing plausibility of entitlement to relief."  *Wert*, 2020 WL 5039466, at *2; *see also Ingram v. Tenn. Dep't of Health*, No. 3:17-cv-01565, 2021 WL 3490025, at *18 (M.D. Tenn. Aug. 9, 2021) ("The amended complaint does not specify the terms of the contract or the extent to which both parties performed.  Without such information, [the plaintiff] has not adequately pleaded that contract was breached or that any breach was the proximate result of the defendants' conduct.").

In any event, Mr. Johnson's naked assertion that the termination of his employment constitutes a breach of contract is not facially plausible in light of the unequivocal and unambiguous terms of the contract. It provides, in pertinent part, that VisuWell "may remove [Mr. Johnson] for Cause and terminate this Agreement and the term of [Mr. Johnson's] employment" if he engaged in conduct that "is or could reasonably be expected to be materially injurious to [VisuWell]." Exh. 1 at § 4.3. Given the widespread negative reaction to Mr. Johnson's actions on social media—which included references to VisuWell—his conduct undoubtedly could be expected to injure the company. *See* Compl. ¶¶ 5, 66-68, 70, 91. Moreover, the employment contract provides that "[VisuWell] shall have the right to terminate this Agreement and [Mr. Johnson]'s employment hereunder at any time ***without Cause***." Exh. 1 at § 4.4 (emphasis added). Thus, regardless of the reason, VisuWell was well within its rights to fire Mr. Johnson. His claims for tortious interference with contract, therefore, fail.

### III. Alternatively, This Case Should Be Stayed Pending The Arbitration Between Mr. Johnson And VisuWell.

In some cases, "it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 n.23 (1983). A stay is justified when claims against a non-arbitrating party are "closely related to, and in part dependent upon, . . . claims against [an arbitrating party]." *Tenn. Imports, Inc. v. Filippi*, 745 F. Supp. 1314, 1330-31 (M.D. Tenn. 1990).

In *Tennessee Imports*, this Court considered whether to stay litigation involving a tortious interference claim against a non-arbitrating party while a related claim for breach of contract was being arbitrated. The Court found that in the arbitration, the plaintiff would "have to establish, *inter alia*, that [the arbitrating party] breached the parties' contract and what damages resulted

from that breach," and noted that in order to prevent double recovery, any damages awarded to the plaintiff under Tenn. Code § 47-50-109 "will have to be reduced by the amount of monetary damages for breach" that the plaintiff recovered in arbitration. *Id.* at 1331. Finding that the non-arbitrating party's liability would "rest, in part, upon . . . matters which will be settled in arbitration," the Court granted a discretionary stay. *Id.*

The same result is warranted in this case to the extent that the Court does not grant judgment on the pleadings. Mr. Johnson's employment contract provides that the parties must submit to "binding arbitration before a mutually agreed upon single arbitrator in Hartford, Connecticut," including with respect to "disputes regarding the occurrence of Cause or Good Reason events that are the subject of any termination." Exh. 1 at § 6.12. Pursuant to that provision, Mr. Johnson and VisuWell currently are engaged in arbitration. Meanwhile, this litigation involves claims that are predicated on the termination of Mr. Johnson's employment, an issue which is expressly subject to arbitration under the employment contract. *See id*. Like the plaintiff in *Tennessee Imports*, Mr. Johnson will have to prove in arbitration that VisuWell breached the employment contract by firing him and the amount of damages to which he is entitled—issues that are inherently inseparable from Mr. Johnson's claims against UH. *See supra* pp. 7-9; *Tenn. Imports*, 745 F. Supp. at 1331; *see also D & R Co. v. BASF Corp.*, No. 09-cv-10641, 2010 WL 11545257, at *7-8 (E.D. Mich. Mar. 26, 2010) (staying tortious interference claims against non-arbitrating party where breach of contract claim against arbitrating party was "highly relevant both to the arbitration and to the litigation").

Moreover, Mr. Johnson would not be unduly prejudiced from a stay since he would not be denied his ability to recover from UH as a result of the delay. On the other hand, UH would suffer prejudice absent a stay given the risk of inconsistent results in the arbitration and

litigation, not to mention the significant expense and inconvenience associated with litigating against Mr. Johnson when his claims against UH may effectively be mooted in the arbitration. *See Aerpio Pharms., Inc. v. Quaggin*, No. 1:18-cv-794, 2019 WL 4717477, at *20-23 (S.D. Ohio Sept. 26, 2019) (collecting cases and granting discretionary stay where claims were intertwined and plaintiff was not unduly prejudiced).

## **CONCLUSION**

All three of Mr. Johnson's claims fail as a matter of law. In Tennessee, a defendant can only be liable for tortious interference with employment relations if there was improper motive and improper means, and can only be liable for tortious interference with contract if there was a breach of contract. The complaint does not plausibly allege these essential elements. For these reasons, the Court should grant UH judgment as a matter of law under Rule 12(c) or, alternatively, stay this case pending the arbitration between Mr. Johnson and VisuWell.

Dated: October 15, 2021

Respectfully submitted,

*/s/ L. Webb Campbell II*
L. Webb Campbell II (No. 11238)
John L. Farringer IV (No. 22783)
SHERRARD ROE VOIGT HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, Tennessee 37201
(615) 742-4200
wcampbell@srvhlaw.com
jfarringer@srvhlaw.com

Justin E. Herdman (admitted *pro hac vice*)
Collin R. Flake (admitted *pro hac vice*)
JONES DAY
901 Lakeside Avenue
Cleveland, Ohio 44114
(216) 586-3939
jherdman@jonesday.com
cflake@jonesday.com

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

Service of the foregoing was accomplished through the Court's Electronic Filing System this 15th day of October, 2021, upon the following:

Todd V. McMurtry
J. Will Huber
HEMMER DEFRANK WESSELS, PLLC
250 Grandview Drive, Suite 500
Fort Mitchell, Kentucky 41017
tmcmurtry@hemmerlaw.com
whuber@hemmerlaw.com

Timothy W. Burrow
BURROW & CRAVENS, P.C.
3016 Hedrick Street, Suite 200
Nashville, Tennessee 37203
tburrow@burrowcravenslaw.com

*/s/ L. Webb Campbell II*